## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA

| CARLETON HARRIS, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | CAUSE NO.: 1:15-CV-217-TLS |
| ALLEN COUNTY BOARD OF COMMISSIONERS and ALLEN COUNTY SUPERIOR COURT, | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

This matter comes before the Court on Defendant Allen County Board of Commissioners' (the "Board") Motion for Summary Judgment [ECF No. 42]. The Defendant seeks judgment as a matter of law on Plaintiff Carleton Harris's claims for disability discrimination under the Americans with Disabilities Act ("ADA"), which he alleged in the Second Amended Complaint [ECF No. 34] against both the Board and Defendant Allen County Superior Court (the "Superior Court"). This matter is ripe for the Court's review.

## BACKGROUND

### A.    Chronology of Events Giving Rise to the Complaint

The Plaintiff obtained employment as a Youth Care Worker at the Wood Youth Center on March 14, 1995. (Harris Aff. ¶ 1, ECF No. 52-2.) The Wood Youth Center was later expanded and renamed the Allen County Juvenile Center ("ACJC") during the Plaintiff's employ there, and in 2003 he was promoted to a Youth Care Specialist at the ACJC. (*Id.* ¶¶ 4–5.) In 2013, the Plaintiff "injured [his] back at work when [he] was kicked by a large inmate." (*Id.* ¶ 8.)

He "received medical treatment for this injury and . . . was paid temporary total disability benefits of $533.52 per month," totaling approximately $5,600. (*Id.* ¶¶ 9–10, Ex. F.)

In May 2014, the Plaintiff saw Dr. Kevin Rahn, who determined that after his course of treatment he was at "maximum medical improvement" ("MMI"), "assigned a permanent partial impairment rating of 3% of the body as a whole," and put the Plaintiff "on work restrictions." (*Id.* ¶ 11; Murphy Dep. Ex. 4, ECF No. 52-3.) Such a diagnosis made the Plaintiff unable to work in his former job. (Harris Aff. ¶ 12.) In a letter from Risk Manager/Attorney Charity Murphy, a Board employee in the Allen County Human Resources Department, the Plaintiff also learned that this diagnosis would terminate his temporary disability benefits. (Murphy Dep. Ex. 3; Harris Aff. Ex. H; Heath Aff. ¶ 7, ECF No. 48-3.)

Because the Plaintiff disagreed with the diagnosis, he requested an independent medical examination ("IME") from the Indiana Worker's Compensation Board, which Dr. Robert Gregori conducted in August 2014. (Murphy Dep. 32:1–33:4, ECF No. 48-1.) Dr. Gregori agreed with Dr. Rahn that the Plaintiff was "currently at maximum medical improvement" and that he should be given "permanent restrictions" at work. (Harris Aff. Ex. J.)[1]

As a result of his diagnosis, the Plaintiff was precluded from "perform[ing] the essential functions of [his] former job as a youth care worker with or without reasonable accommodation," according to the ACJC. (*Id.*) In May and June 2014, the Plaintiff spoke with both Murphy and with Personnel Manager Chandra Reichert, a Superior Court employee at the ACJC, about possible open positions he could take. (Murphy Suppl. Dep. 57:14–25, ECF No. 55-2; Reichert Aff. ¶ 2, ECF No. 48-4.) The Plaintiff had applied for a full-time position as a judicial assistant

---

[1] In spite of the doctors' conclusions, the Plaintiff "felt like [he] would [have] benefit[ed] from more treatment." (Harris Aff. ¶ 11.)

2

in May 2014, while he was obtaining the IME, but was only offered a part-time position, which he did not accept because it lacked benefits. (*Id.* ¶¶ 13–15, Ex. I.)[2]

In an October 2014 letter, Murphy advised the Plaintiff that it was her "responsibility as the Americans with Disability Coordinator to determine if there [we]re any other job vacancies within Allen County Government that [the Plaintiff] could transfer into or apply." (*Id.*) Murphy included a link to jobs available at that time and informed him that his "unpaid leave of absence w[ould] end on Monday, October 27, 2014," if he did not pursue any vacancies. (*Id.* Ex. J.) After the October letter, the Plaintiff "applied for several" additional openings but did not obtain employment. (*Id.* ¶ 18.)

On October 31, 2014, the Plaintiff received a letter from Insurance Manager Debra Hudson, a Board employee in the Allen County Human Resources Department. (*Id.* Ex. K.) Hudson stated that she "ha[d] not received the premium to continue [the Plaintiff's] insurance coverage . . . through October 31, 2014," and told him to "make payment no later than November 7, 2014, to avoid termination of coverage." (*Id.*)[3] When the Plaintiff called Hudson back to contest the letter, she told him that "this was [his] last payment" and that he was effectively terminated from his employment with the ACJC. (*Id.* ¶ 19.) In a subsequent phone call, Murphy confirmed to the Plaintiff that he "was no longer employed because there were no jobs within [his restrictions]" and he "did not qualify for any of the jobs [he] applied for." (*Id.* ¶¶ 20, 22.)

---

[2] The Plaintiff stated that he applied for a judicial assistant position in May that was actually full-time, but Murphy was unaware of that position so instead "said she could offer [the Plaintiff] a couple more dollars per hour for the part-time" position. (*Id.* ¶ 14.)

[3] The Plaintiff claims that he "had, in fact, made the payment" (*Id.* ¶ 19), and that while he was off work for his injury, he "paid [his] premium for health insurance directly to the Allen County Human Resources Department." (*Id.* ¶ 16).

3

**B.     Disputes Pertinent to this Motion**

Relevant to deciding this Motion is the Board and Superior Court's makeup, the ACJC's relationship to the Defendants, and Murphy's position. The Court denotes where the parties disagree upon these questions.

**1.     *Structure of the Board, the Superior Court, and the ACJC***

The Superior Court's Family Relations Division established the ACJC, pursuant to Indiana Code §§ 31-31-8-2 & 31-31-8-3. (Heath Aff. ¶ 3.) The Superior Court "appoints staff and oversees the operations of the juvenile detention facility that is housed in the building named the [ACJC]. The [Superior] Court is the employer of the staff appointed by it to work at the juvenile detention facility." (*Id.* ¶ 4.) The Superior "Court has not delegated the hiring, firing, or control of those individuals working at the juvenile detention facility to the County, or its Board of Commissioners, or its County Council. The Allen Superior Court hires, fires, and . . . directs the day to day work of those individuals working at the" ACJC. (*Id.* ¶ 6.) The Board states that neither it nor Murphy "made the decision to either hire or to terminate the employment of [the Plaintiff]" (*Id.* ¶ 7), while the Plaintiff disputes this contention.

The Allen County Council is the "fiscal body of the County of Allen, Indiana, [and] pays all expenses for" the ACJC, which includes "compensation, health insurance benefits, and workers compensation insurance and claims for the non-judicial employees appointed by the [Superior] Court" working at the ACJC. (*Id.* ¶ 5.)

"Allen County has only one (1) worker's compensation policy and all individuals paid by County funds are covered by that policy, regardless of the governmental unit by which they are employed. . . . [T]here can only be one worker's compensation policy for all employees paid by

county funds because the 'County' is only permitted by law to have one Tax Identification Number." (Murphy Suppl. Aff. ¶ 10, ECF No. 55-1.)

**2.**  *The Employment Status of Charity Murphy*

According to the Board, Murphy was "employed by the Board . . . as the Risk Manager/Attorney within the Allen County Human Resources Department." (Murphy Aff. ¶ 2.) She had numerous duties within that position, but pertinent to this case she "oversees the processing of worker's compensation claims for those individuals covered by the Board's worker's compensation policy in conjunction with the contracted third-party administrator, HealthSmart." (Def.'s Br. 3, ECF No. 43 (citing Murphy Aff. ¶¶ 2–4).) After the Plaintiff's initial injury, Murphy worked with HealthSmart "to ensure that Plaintiff obtained treatment and other benefits under the Indiana Worker's Compensation laws," and then once he was determined to be at MMI liaised between the "Superior Court, Family Relations Division . . . , and the Plaintiff" to see about accommodating his restrictions or relocating him. (Murphy Aff. ¶ 6.) The Plaintiff claims that Murphy, as a Board employee, made the decision to terminate his employment, but the Board claims that "Murphy does not hire or fire Court employees or have any involvement in the day to day operations of the Allen Superior Court, including its Family Relations Division." (Murphy Suppl. Aff. ¶ 2.)

**3.**  *Representations of the Board and the Superior Court to the Plaintiff*

According to the Plaintiff, the job description sheet for an ACJC Youth Care Worker includes a seal in the upper left corner for the "Board of Commissioners of the County of Allen." (Harris Aff. ¶ 6, Ex. A.) "A medical records authorization that [the Plaintiff] signed when he was hired lists his employer as the [Board]" (*Id.* ¶ 3, Ex. B), and "[t]he Agreement to Compensation

form [he] signed named [his] Employer as the 'Allen County Government'" (*Id.* ¶ 10, Ex. F). The job description sheet for ACJC Youth Care Specialists, a position which the Plaintiff advanced into, also includes a seal in the upper left corner that states "Allen County." (*Id.* ¶ 6, Ex. D.) When the Plaintiff's job performance was evaluated as a Youth Care Worker and then as a Youth Care Specialist, the forms were titled "Allen County Employee Performance Appraisal." (*Id.* ¶ 7, Ex. E.)[4]

The Superior Court made an offer of employment to the Plaintiff, and that form included a seal that stated "Allen Superior Court, Allen County, Indiana." (Reichert Aff. Ex. A-1, ECF No. 48-4.) In signing the acknowledgement form in the Superior Court Employee Handbook, the Plaintiff acknowledged that he "entered into an employment relationship with the Superior Court." (*Id.* Ex. A-3.) Additionally, the Superior Court notified the Plaintiff that he had been released from his probationary status at the beginning of his employment there. (*Id.* Ex. A-2.) All disciplinary action taken against the Plaintiff was executed by the Superior Court. (*Id.* Ex. A-3 to A-6.)

Allen County pays the salary, benefits, and all expenses for the Superior Court's employees pursuant to state law. (Murphy Suppl. Aff. ¶ 8.) The job descriptions for the Plaintiff's positions were included in Allen County's job classification system and "marked with 'Allen County Job Descriptions'" (*Id.*)

---

[4] The Plaintiff argues that "all of the documents filed with the Indiana Worker's Compensation Board, except for one, list [his] employer as "Allen County" or "Allen County Government." (Pl.'s Resp. 4 n.1, ECF No. 51 (citing Harris Aff. Exs. F–G, L–M).) The final settlement agreement, dated November 30, 2015, listed the defendant employer as "Allen County" but included a handwritten insertion of "Superior Court of" before "Allen County. (Harris Aff. Ex. M.) The Plaintiff claims that this happened after he was presented with the form, signed it, and returned it, but before it was filed with the Indiana Worker's Compensation Board. (Pl.'s Resp. 4 n.1.)

### C. Procedural History

On March 5, 2015, the Plaintiff filed an employment discrimination charge against the ACJC. (Murphy Aff. Ex. A.) Then, on March 19, 2015, the Plaintiff filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC") against "Allen County Court D/B/A [ACJC]," and also named Murphy. (*Id.* Ex. B.) On May 28, 2015, the EEOC issued the Plaintiff a right-to-sue letter. (Second Am. Compl. ¶ 19, ECF No. 34.)

The Plaintiff filed his Complaint [ECF No. 1] against the Defendants on August 17, 2015, an Amended Complaint [ECF No. 13] on October 26, 2015, and a Second Amended Complaint [ECF No. 34] on June 10, 2016. The Board filed an Answer [ECF No. 35] on June 20, 2016, and the Superior Court filed an Answer [ECF No. 37] on June 24, 2016. The Board's Motion for Summary Judgment was filed on November 14, 2016, the Plaintiff's Response [ECF No. 51] was filed on December 14, 2016, and the Board's Reply [ECF No. 54] was filed on December 28, 2016.

In addition to the summary judgment briefings, the Plaintiff filed a Rule 56 Motion to Strike [ECF No. 50] on December 14, 2016, on the grounds that the Affidavit of Charity Murphy [ECF No. 44-2] was inadmissible hearsay. The Board filed a Response [ECF No. 56] on December 28, 2016, and also on that date filed its own Rule 56 Motion to Strike [ECF No. 57] in which it sought to strike various paragraphs of the Affidavit of the Plaintiff [ECF No. 52-1] that lacked personal knowledge or were inadmissible hearsay. The time has elapsed for the Plaintiff to respond to the Board's Motion. The Court will consider these Motions in conjunction with the Motion for Summary Judgment to the extent that it is necessary.

## STANDARD OF REVIEW

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is the moment in litigation where the nonmoving party is required to marshal and present the court with evidence on which a reasonable jury could rely to find in that party's favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). A court should only deny a motion for summary judgment when the nonmoving party presents admissible evidence that creates a genuine issue of material fact. *Luster v. Ill. Dep't of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011) (first citing *United States v. 5443 Suffield Terrace*, 607 F.3d 504, 510 (7th Cir. 2010); then citing *Swearnigen-El v. Cook Cty. Sheriff's Dep't*, 602 F.3d 852, 859 (7th Cir. 2010)). A court's role in deciding a motion for summary judgment "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. [A] court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Heochst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Material facts are those that are outcome determinative under the applicable law. *Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997). Although a bare contention that an issue of material fact exists is insufficient to create a factual dispute, a court must construe all facts in a light most favorable to the nonmoving party, view all reasonable inferences in that party's favor, *see Bellaver v. Quanex Corp.*, 200 F.3d 485, 491–92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

**DISCUSSION**

Neither party disputes that the Superior Court was the Plaintiff's employer. (Pl.'s Resp. 9–10; Def.'s Br. 6–7.) However, the Plaintiff argues that the Board and the Superior Court "constitute a 'single employer' for purposes of the" ADA, and the Board disputes that contention. (Pl.'s Resp. 10.) The ADA prohibits employers from discriminating against "a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Employers are also prohibited under the ADA from "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." *Id.* § 12112(b)(5)(A). Under the ADA, an employer is defined in general terms as "a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year." 42 U.S.C. § 12111(5).

To determine whether an entity is an employer of a particular individual, a court should "look to the economic realities of the relationship and the degree of control the employer exercises." *Heinmeier v. Chemetco, Inc.*, 246 F.3d 1078, 1082–83 (7th Cir. 2001); *see also Tamayo v. Blagojevich*, 526 F.3d 1074, 1088 (7th Cir. 2008) ("[A]n affiliated corporation . . . may be considered an employer under Title VII, in addition to the direct employer, if the affiliate directed the discriminatory act, practice, or policy of which the employee is complaining.") (internal quotation marks omitted). Courts apply a common law test that "involves the application of the general principles of agency to the facts," which considers:

> (1) the extent of the employer's control and supervision over the worker, including directions on scheduling and performance of work, (2) the kind of occupation and nature of skill required, including whether skills are obtained in the workplace, (3) responsibility for the costs of operation, such as equipment,

> supplies, fees, licenses, workplace, and maintenance of operations, (4) method
> and form of payment and benefits, and (5) length of job commitment and/or
> expectations.

*Alexander v. Rush N. Shore Med. Ctr.*, 101 F.3d 487, 492 (7th Cir. 1996) (citing *Ost v. W. Suburban Travelers Limousine, Inc.,* 88 F.3d 435, 440 (7th Cir. 1996)). The employer's right to control is the most important factor. *Id.* at 492–93. "If an employer has the right to control and direct the work of an individual not only as to the result to be achieved, but also as to the details by which that result is achieved, an employer/employee relationship is likely to exist." *Id.* at 493 (citations omitted); *see also Love v. JP Cullen & Sons, Inc.*, 779 F.3d 697, 703 (7th Cir. 2015) ("[W]hen control is examined, the key powers are, naturally, those of hiring and firing."). Identification of an employer for purposes of the federal employment discrimination laws "is a question of federal law." *Carver v. Sheriff of LaSalle Cty., Ill.,* 243 F.3d 379, 382 (7th Cir. 2001) (citing *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 754–55 (1998)).

State law is relevant to the employment situation "insofar as it describes the plaintiff's position, including his duties and the way he is hired, supervised, and fired." *Curl v. Reavis*, 740 F.2d 1323, 1327 (4th Cir. 1984) (quoting *Calderon v. Martin Cty.*, 639 F.2d 271, 272–73 (5th Cir. 1981)). Indiana law provides that a "juvenile court may establish juvenile detention and shelter care facilities for children." Ind. Code § 31-31-8-3(a). "If the juvenile court operates the juvenile detention and shelter care facilities, the judge shall appoint staff and determine the budgets." *Id.* § 31-31-8-3(c). However, "all expenses . . . for the juvenile detention facility shall be paid from the county general fund." *Id.* § 31-31-8-3(d).

The Superior Court is delegated the right under Indiana law to "appoint probate commissioners, juvenile referees, bailiffs, court reporters, probation officers, and other

10

personnel, including an administrative officer, the court believes are necessary to facilitate and transact the business of the court." *Id.* § 33-33-2-14(a).

> The salaries of the personnel shall be fixed and paid as provided by law. If the salaries of any of the personnel are not provided by law, the amount and time of payment of the salaries shall be fixed by the court, to be paid out of the county treasury by the county auditor, upon the order of the court, and be entered of record. The officers and persons appointed shall perform duties as are prescribed by the court. Any administrative officer appointed by the court shall operate under the jurisdiction of the chief judge and serve at the pleasure of the chief judge. Any probate commissioners, magistrates, juvenile referees, bailiffs, court reporters, probation officers, and other personnel appointed by the court serve at the pleasure of the court.

*Id.* § 33-33-2-14(c). As a youth care worker for the ACJC, the Plaintiff would have qualified as "other personnel appointed by the court," which meant that he was required to "perform duties as are prescribed by the court" and to "serve at the pleasure of the court." *Id.* The Board offered an Affidavit that neither it nor "Murphy, made the decision to either hire or to terminate the employment of" the Plaintiff, but rather the Superior Court did. (Heath Aff. ¶¶ 6–7.) Further, the undisputed evidence shows that the Superior Court, not the Board, sets the ACJC's budgets, which includes employee salary levels. (*See id.* ¶¶ 3–5.) Thus, Indiana law and the aforementioned evidence show that the right to control and supervise the Plaintiff is allocated to the Superior Court.

Even so, the Board and the Superior Court could be a single-employer of the Plaintiff, depending upon the "economic realities" of the relationship. The Plaintiff offered numerous evidence from his employment at the ACJC to argue that the Board was his employer. For instance, certain formalities appear to identify the Board as his employer, such as the titling of his job performance evaluations, the seals on his paperwork, and job descriptions for his positions. Further, his worker's compensation and benefits were all provided for and paid by the Board. On the other hand, the Board argues that this evidence merely shows its compliance with

11

Indiana's statutory requirements. Specifically, the "job descriptions bear the Allen County seal because they were made part of the county's job classification system," and the "medical records authorization signed by the Plaintiff had to do with worker's compensation claims," which "is part of the [county's] statutory obligation to pay the expenses of the [ACJC]." (Def.'s Reply 12, ECF No. 54.)

Additionally, Murphy played an outsized role in communicating with the Plaintiff during his injury and termination, despite her position as a Board employee in the Allen County Human Resources department. Specifically, she sent the Plaintiff FMLA paperwork, served as a point person for him whenever worker's compensation issues arose, and also offered him a part-time position with the ACJC. In response, the Board stated that Murphy communicated with the Plaintiff specifically "because he had an open worker's compensation claim" and "his employment as a juvenile care worker . . . was ending due to" his injury. (*Id.*) The Board acknolwedges that Murphy could have been clearer in telling the Plaintiff that she was not a Superior Court employee tasked with helping accommodate him, but her discussions do not create a triable issue of fact as to whether the Board was the Plaintiff's employer.[5]

The Plaintiff cites two cases to argue that this evidence creates a genuine issue of material fact as to whether the Board and the Superior Court qualify as a single-employer. First, the Plaintiff relies on *Tamayo*, where two separate governmental entities qualified as a single-employer because one of the entities had the power to hire, promote, demote, and discharge the plaintiff, while the other "controlled her salary . . . as well as a number of other personnel

---

[5] Also, the Plaintiff argues that it was the Board that made the actual decision that the ACJC could not reasonably accommodate his employment and thus that he should be terminated. This argument is based on an October 17, 2014, letter that Murphy sent to the Plaintiff on the Board's letterhead, which "clearly suggests that it was the County, through Murphy, that was making these decisions." (Pl.'s Resp. 14.) But the above discussion of Indiana's statutory scheme supports the opposite conclusion—that Murphy and the Board were not the ones who made these decisions.

decisions." *Tamayo*, 526 F.3d at 1088–89. Second, the Plaintiff relies on *Heinemeier*, where the court looked "to the economic realities of the relationship and the degree of control the employer exercise[d]" and found that the entity controlling the plaintiff's compensation was the plaintiff's employer, despite another entity controlling other aspects of her employment. *Heinemeier*, 246 F.3d at 1082–83.

The Court is unpersuaded. *Tamayo* is inapplicable because it concerned the federal Equal Pay Act and the putative employer's unequal pay of the plaintiff. The Seventh Circuit specifically noted that, because of the subject matter of the complaint, control of the plaintiff's salary was more important than the power to hire or terminate. Alleging that the putative employer "controlled her salary" was "more than sufficient to avoid dismissal," *Tamayo*, 526 F.3d at 1088–89, but *Tamayo* said nothing about what evidence must be introduced to withstand a summary judgment motion. *Heinemeier* is similarly inapplicable. And unlike *Heinemeier*, where private entities were free to structure which one compensated employees and which one controlled them, here there is no discretion because Indiana law specifies that the Superior Court is responsible for controlling staff and establishing budgets (and, in turn, staff salaries).

More analogous to this dispute is *O'Reilly v. Montgomery County*, No. 102-CV-1242, 2003 WL 23101795 (S.D. Ind. Feb. 24, 2003). In *O'Reilly*, the court determined that probation officers served at the sole discretion of the court because of Indiana law. Additionally, "the duties of probation officers [we]re prescribed by statute and consist[ed] solely of assisting the court and performing such tasks as the court may direct." *Id.* at *5. These two aspects of the statutory scheme meant that the local county was not a single-employer of court probation officers because the "*main indicia of employment*, the right to control, [wa]s prescribed by statute" solely to the court. *Id.* at *3. Adopting the reasoning of *O'Reilly*, the Court finds that the

Defendants were not a single-employer of the Plaintiff. Facts like "Allen County" appearing on letterhead and Murphy's contacting the Plaintiff do not counsel in favor of finding that the Board was also the Plaintiff's employer because Indiana's statutory scheme only allocates the "right to control" ACJC employees to the Superior Court. Because the Court finds that the Board was not an employer of the Plaintiff for purposes of the ADA, and thus not a proper defendant in this case, the Board is entitled to judgment as a matter of law.[6]

## CONCLUSION

For the foregoing reasons, Defendant Allen County Board of Commissioners' Motion for Summary Judgment [ECF No. 42] is GRANTED.

SO ORDERED on April 14, 2017.

       s/ Theresa L. Springmann
CHIEF JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT

---

[6] Alternatively, the Board moved for summary judgment on the grounds that it was not named in the Plaintiff's EEOC charge. The Court has determined that the Board is entitled to judgment as a matter of law because it was not an employer of the Plaintiff, so the Court need not decide this alternative grounds for summary judgment.